[Civ. No. 4653.  Second Appellate District, Division One.—June 30, 1925.]

## L. E. PRYOR, Respondent, v. FRUIT DISTRIBUTORS SERVICE COMPANY, INC. (a Corporation), Appellant.

[1] SALES — PURCHASE OF LETTUCE CROPS — ACTION FOR DAMAGES — CONSTRUCTION OF CONTRACT—PLEADING.—In this action for damages for breach of contract, based upon the refusal of defendant to accept more than three cars of lettuce from plaintiff, the allegation in the complaint that plaintiff agreed to sell and that defendant agreed in writing to buy the entire crop of lettuce grown on plaintiff's ranch was not negatived by the document set forth in the complaint and which recited, over defendant's signature, that the latter "will accept 3 cars of lettuce at 1.60 per crate, also accept the balance of your crop at the same price. The lettuce is not to be cut until ready and all lettuce is to be of marketable quality.  The above price is on packed crates.  We will pay cost of hauling from field also pay all cost of packing including packing material"; and such contract having been written by defendant's manager, any uncertainty therein should be interpreted most strongly against defendant.

[2] ID.—CONTENTS OF WRITINGS—EVIDENCE—INSTRUCTIONS.—In such action, defendant having alleged in its answer that, at the time of the signing by it of the writing pleaded in plaintiff's complaint, the latter signed a writing which provided that he would deliver to defendant enough lettuce for three cars at the price stated in defendant's acceptance. "Also right accept or reject balance of lettuce," but at the trial plaintiff having testified that this latter provision was not contained in the document at the time he signed it, the court properly instructed the jury that if the sentence, "Also right to accept or reject balance of lettuce," was not a part of the writing at the time of its delivery to defendant, then the two writings constituted a valid and binding contract for the purchase and sale of the entire lettuce crop of plaintiff.

[3] ID.—MARKETABLE LETTUCE—INSTRUCTIONS.—In such action, the court did not err in instructing the jury that "The term 'marketable lettuce' means such as was fit to be offered for sale in a market; such as may be lawfully sold or bought, and if you find from the evidence that the lettuce which the plaintiff produced was of a marketable quality, according to the foregoing definition,

---

1.  See 6 Cal. Jur. 307; 6 R. C. L. 855.

and if you should find from the evidence that the lettuce which was produced by him was actually marketed or sold to the whole-sale trade, with the exception of that which remained in the field, if any, and you also find that the lettuce which remained in the field, if any, could have been sold on the market or was of a marketable quality provided there had been any demand for it, then I charge you that it is your duty to find the value of such lettuce to the plaintiff, and to determine the amount which he should recover from the defendant in accordance with the other instructions given by the court."

[4] ID.—PRIOR CONTRACT WITH THIRD PARTY—EXCUSE FOR BREACH.— The fact that plaintiff had entered into a prior contract with a third party for the marketing of plaintiff's entire crop of lettuce for a stated commission based on the amount of sales, did not excuse defendant from proceeding further with its contract after learning of such prior contract, where there was nothing in the prior contract which would interfere with the subsequent contract made between plaintiff and defendant, or prevent defendant from obtaining both title and exclusive possession of the lettuce.

[5] ID.—MEASURE OF DAMAGES—VALUE IN NEAREST MARKET—EVI-DENCE—ERRONEOUS INSTRUCTION.—In such action, although it was error to instruct the jury that, from the contract price of the lettuce, it should deduct "the proceeds received by him on the sale thereof," instead of the price which he could have received in the nearest market, this error was not prejudicial to the extent that it caused any miscarriage of justice, where it was shown by the uncontradicted testimony of a witness for plaintiff, who marketed a portion of the lettuce refused by the defendant, that he made the best disposition of it at that time possible, using his experience as a shipper, and that with regard to the part of the crop which plaintiff did not sell, he was unable to market it, that he did not pick it because the marketing conditions at that time would not justify the expense of picking and shipping, and that he tried to market it from the time it was ready for market-ing until it was finally abandoned in the field, and the verdict of the jury was for a sum considerably less than the amount of damage incurred would have been under a computation based upon the facts proved.

(1) 35 Cyc., p. 97, n. 5, p. 587, n. 87.   (2) 35 Cyc., p. 52, n. 40. (3) 38 Cyc., p. 1686, n. 53.   (4) 35 Cyc., p. 275, n. 74.   (5) 4 C. J., p. 1045, n. 49.

APPEAL from a judgment of the Superior Court of Kern County.   Howard A. Peairs, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Clement L. Shinn and E. E. Noon for Appellant.

Kaye & Siemon for Respondent.

CONREY, P. J.—In this action the plaintiff recovered judgment against defendant on account of defendant's breach of a contract to purchase from plaintiff his crop of lettuce. The defendant appeals from the judgment.

[1] Appellant's first point is that, for the reason that under a proper construction of the contract defendant was not required to accept more than three cars of lettuce, the complaint does not state a cause of action. The complaint alleged that on March 22, 1922, plaintiff and defendant entered into a contract whereby the plaintiff agreed to sell to the defendant and the defendant agreed to buy from the plaintiff his crop of lettuce then growing on his ranch near Delano, in Kern County, which contract was in writing and reads as follows:

"Delano, Cal., 3/22/22.

"We will accept 3 cars of lettuce at 1.60 per crate, also accept the balance of your crop (L. E. Pryor) at the same price. The lettuce is to not be cut until ready and all lettuce is to be of marketable quality. The above price is on packed crates. We will pay cost of hauling from field also pay all cost of packing including packing material.

"Yours truly,

"FRUIT DIST. SERVICE Co., INC.

"By P. W. WILLIAMS, Mgr."

It is alleged that thereafter in performance of said contract plaintiff delivered to the defendant and defendant received and paid the contract price for three carloads of said lettuce; that on or about April 7, 1922, the defendant repudiated said contract and then and thereafter refused to accept any further lettuce from the plaintiff; that the plaintiff performed all the conditions required by him to be performed under the terms of said contract, and subsequent to the repudiation of the contract plaintiff produced a total of 5,062 crates of lettuce. The complaint then stated the excess of the amount due from the defendant under the contract for said 5,062 crates of lettuce over the value thereof

to the plaintiff, together with the expenses properly incurred by the plaintiff in carrying the said lettuce to market, and demanded judgment for said excess in amount as thus ascertained.

Appellant contends that the subject of the written memorandum was not single and entire, but that it contained two propositions, the first being to accept three cars of lettuce at $1.60 per crate, and the second to accept the balance of the crop at the same price. As to the second proposition or the second part of the proposition, appellant contends that the complaint shows nothing more than that appellant offered to accept at the stated price the remainder of the crop over and above the specified three cars of lettuce; and that before the additional lettuce was produced, defendant withdrew its offer to purchase the same. Appellant claims that it had the right to withdraw this offer because the plaintiff, by the document signed by defendant, did not bind himself to deliver any lettuce to the defendant.

We think that the complaint stated a cause of action. It directly alleged that the plaintiff agreed to sell and that the defendant agreed to buy the entire crop. Although the contract is alleged to be in writing and is set out in the complaint, there is nothing in the document sufficient to negative or which necessarily conflicts with the facts alleged as above stated. On the contrary, the references to "all lettuce" and to "the above price" clearly included the entire crop. The written promise of defendant to "accept" implied an existing offer. The contract was written by defendant's manager. If uncertain it should be interpreted most strongly against the defendant. (Civ. Code, sec. 1654.) Moreover, the plaintiff introduced at the trial, without objection from the defendant, evidence tending to prove such offer, acceptance of which was contained in said written instrument.

It is further worthy of note that there was no demurrer to the complaint, and that the answer of the defendant alleged that in addition to said writing signed by the defendant there was at the same time executed another writing signed by the plaintiff and delivered to the defendant, which writing was as follows:

"3/22/22 Delano, Cal.

"This is to certify that I will deliver you (Fruit Dist. Service Co., Inc.) enough lettuce for 3 cars 320 crates to the car; lettuce to be from the first that matures. I will not cut

lettuce until it is ready. The price is to be $1.60 per pack out crate. You are to pay for the hauling, packing, including all packing supplies. Also right accept or reject balance of lettuce.

> "Yours truly,
> "L. E. PRYOR."

At the trial it was admitted by the plaintiff that he signed and delivered this second document, but at the same time he testified that at the time of such signature and delivery the sentence reading, "Also right to accept or reject balance of lettuce," was not contained in the document. This is one of the disputed facts in the evidence shown in the record. Since the jury's verdict implies a finding that said sentence was not in the document as signed and delivered by the plaintiff, this is an established fact of the case.

It further appears from the evidence that prior to the defendant's refusal to take the balance of the crop, the defendant's own construction of the contract was that it had bought the entire crop. For, in a letter of date April 4, 1922, by the defendant to the plaintiff, it said: "In reference to the balance of your crop. Wish to advise, that we are willing to take the balance of the crop, in fact, in favor of same provided we are able to get a better grade and pack than we have had. We want good quality which we bought."

[2] Appellant contends that the court erred in giving to the jury an instruction saying that if the sentence, "Also right to accept or reject balance of lettuce," was not a part of the writing at the time of its delivery to the defendant, then the two writings constituted a valid and binding contract for the purchase and sale of the entire lettuce crop of the plaintiff. Appellant's argument in support of this contention is that the document set out in the complaint is merely in the form of an offer of defendant regarding two separate propositions; that the document was not signed by the plaintiff; that no tender was made of the balance of the crop, and that no acceptance by the plaintiff of said offer was communicated to the defendant before the withdrawal of the offer. We think that under the evidence the two documents should be construed together as constituting one entire contract by which both parties were bound. The question of tender is not pertinent to the suggested objection to the instruction. The point relating to acceptance of de-

fendant's "offer" has been covered in our discussion of the complaint. The court did not err in giving said instruction.

After the three cars had been shipped, a fourth car was loaded and prepared for shipment. This car was rejected and the defendant refused to take any more of the crop. The principal excuse offered by it for such refusal, other than the claim that there was no contract, was that the rejected lettuce was not of marketable quality. H. S. Moyes, defendant's inspector, gave testimony to the effect that it was not of marketable quality. "Marketable lettuce must be lettuce that is of edible quality. Many times vegetables are sold that would not—should not be eaten if the health authorities got them first. I would say that a certain percentage of the lettuce in the packing house wouldn't be marketable. All of it was not marketable, even though it may have been sold to dealers, and marketed and went to the consumer." Defendant produced some other testimony to like effect. On the other hand, plaintiff testified that he produced 5,062 crates of good lettuce after the three cars were shipped to the defendant, a large part of which was sold. These sales were made after the defendant had refused the fourth car and after defendant had given notice that he would not take any more of the crop and after the plaintiff had notified the defendant by telegraph as follows: "Further shipment of lettuce is ready for marketing and I will cut and pick tomorrow April 15th pursuant to our contract and in event of your failure to arrange for due disposition of same shall dispose of same to best possible advantage for you and hold you responsible for loss incurred if any." It was on April 18th that the defendant definitely rejected the whole crop by letter signed by the defendant, by its authorized representative, and in the following terms: "Wish to advise that I consider your crop of lettuce very poor quality and undesirous for shipping. Therefore reject all." Prior to that time, by letter of date April 8th, defendant referred to its rejection of the fourth car, and said that for stated reasons, "we do not care to handle your lettuce under any condition."

From the testimony there was evidence sufficient to sustain the implied finding of the jury that the 5,062 crates of lettuce were of marketable quality. [3] But the appellant contends that the court erred in the definition which it gave to the jury of the word "marketable" in its instruction on

that subject.  Said instruction reads as follows: "The term 'marketable lettuce' means such as was fit to be offered for sale in a market; such as may be lawfully sold or bought, and if you find from the evidence that the lettuce which the plaintiff produced was of a marketable quality, according to the foregoing definition, and if you should find from the evidence that the lettuce which was produced by him was actually marketed or sold to the wholesale trade, with the exception of that which remained in the field, if any, and you also find that the lettuce which remained in the field, if any, could have been sold on the market or was of a marketable quality provided there had been any demand for it, then I charge you that it is your duty to find the value of all of such lettuce to the plaintiff, and to determine the amount which he should recover from the defendant in accordance with the other instructions given to you by the court."

The definition of the word "marketable," as contained in the foregoing instruction, does not differ materially from the definitions of that word as found in the principal English dictionaries.  It does not differ from the meaning of the word as understood in its ordinary and popular sense. This, therefore, is a sufficient definition, unless a special meaning was given by usage to the phrase "marketable lettuce," as used in the contract.  (Civ. Code, sec. 1644.)  The defendant attempted to show that the words in question did have a special meaning, by proving certain specifications of the United States Bureau of Standards which had been used for about three years as establishing a standard in order to obtain a government certificate of quality of such merchandise—presumably for interstate shipment.  But the defendant failed to prove that this government standard was mentioned in the negotiations for the contract.  The witness Furokawa testified that any lettuce that would not comply with one of the two grades established by the government standards would not be marketable, and that "all the trade follows the specifications."  But he further testified that a great deal of lettuce was sold that did not come up to those specifications.  The witness W. S. Braddus, a man of extensive experience as a grower, shipper and market man in the vegetable business, testified that by marketable lettuce he understood lettuce that would sell on the market, and that he was not familiar with said United States Bureau of Stand-

ards market specifications on lettuce.   We are of the opinion that the disputed phrase was correctly defined by the court in its ordinary and popular sense, and that the court did not err in its instruction to the jury on that subject.

[4]   Appellant contends that it was excused from proceeding further with its contract after learning that the plaintiff had made a prior contract with Braddus for the marketing of his entire lettuce crop.   It appears that on March 10th the plaintiff and Braddus had entered into a contract under which it was agreed that Braddus should pack and ship plaintiff's lettuce crop and receive therefor a stated commission based on the amount of sales.   There was nothing in that contract which would interfere with the subsequent contract made between plaintiff and defendant, or prevent defendant from obtaining both title and lawful possession of the merchandise in question.   Therefore this excuse fails.

[5]   Concerning the measure of damages, the court first stated in substance the terms of sections 3311 and 3353 of the Civil Code, and further instructed the jury that it was their duty to determine first the number of crates of marketable lettuce produced by the plaintiff which he might have delivered to the defendant; second, the value of the crates produced by him at the contract price of $1.60 per crate; third, value of the lettuce so produced, to the plaintiff; that by "value to plaintiff" was meant the price which he could have obtained for the lettuce in the market nearest to Delano, less the expenses which the plaintiff was put to in the way of hauling, packing and transporting the lettuce to such market.   Thus far appellant makes no objection to said instruction.   His objection relates to the remainder thereof, which reads as follows: "Having determined the three foregoing factors you will then compute the damages which the plaintiff is entitled to recover from the defendant, if any, in the following manner: From the contract price of the lettuce which you find that plaintiff produced, you will deduct the proceeds received by him on the sale thereof and to the remainder thus obtained, you will add the expenses incurred by him in hauling, packing and paying transportation of the lettuce to the market.   The result thus obtained will be the amount of damages which the plaintiff should recover from the defendant."

Appellant contends that by the language last above quoted the court abandoned the earlier part of the instruction, and instructed the jury that the amount actually received on the sale of the lettuce was in fact the value thereof. We think that this criticism is sound, and that the instruction should not have been thus given. But we are also of the opinion that under the evidence this error was not prejudicial to the extent that it caused any miscarriage of justice. The amount of the receipts and of the expenses was definitely established without conflict in the evidence. In like manner it was shown by the uncontradicted testimony of Braddus, who marketed the lettuce for plaintiff, that he made the best disposition of it at that time possible, using his experience as a shipper. In view of these facts, there would not be any appreciable difference between the net results of the sales and the actual value to the plaintiff, of that lettuce. With regard to that part of the crop which the plaintiff did not sell (amounting to 1,350 crates), he testified that he was unable to market it; that he did not pick it because the marketing conditions at that time would not justify the expense of packing and shipping; that he tried to market it ''all the way from April the 15th until it was finally abandoned in the field, and this was all I was able to market.'' There is no evidence to the contrary. It follows that this part of the crop was without value to the plaintiff, or at all. Under such circumstances there was little for the jury to do in estimating damages, other than to make a computation, based upon the facts proved. Under that computation, the amount of damages incurred would have been a little over $9,600. The amount awarded by the jury was only $8,000. It thus plainly appears that the defendant probably did not suffer any injury by reason of the error complained of in the instruction relating to the measure of damages.

The judgment is affirmed.

Houser, J., and Curtis, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 27, 1925.

Houser, J., *pro tem.,* did not participate.